UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**TERRANCE L. KIMBROUGH,**

    Plaintiff,

vs.                              Case No. 4:17cv249-RH/CAS

**CORIZON HEALTH, INC.,
M. TANNER, and V. HAMLET,**

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, a life-sentenced inmate proceeding pro se, filed an amended complaint, ECF No. 8, on July 19, 2017, and service was directed. ECF Nos. 7, 11. Service has been carried out as to all Defendants named in the complaint. Defendants have filed a motion to dismiss for failure to state a claim and for failure to exhaust administrative remedies.[1] ECF No. 24. Plaintiff has filed a response to the motion to dismiss and exhibits, which have been considered. ECF Nos. 27, 27-1.

---

[1] Defendants filed a motion to dismiss or for summary judgment, which this Court determined would be treated only as a motion to dismiss. ECF No. 25.

**Allegations of the Amended Complaint**

Plaintiff makes the following pertinent allegations: On February 1, 2016, he injured his leg playing basketball and went to the prison medical department operated by Corizon Health, Inc., where SLPN M. Tanner refused to examine him. He was limping and favoring his right leg. The nurse ignored his need for health services and failed to initiate medical intervention, which prevented him from receiving screening that would have identified his medical needs and determine the urgency with which he needed to see a specialist. ECF No. 8 at 5. On February 2, 2016, he filled out a sick call form which allowed him to be seen, but he sat in the medical department all day without being seen. It was suggested that he submit another sick call form and return the next day. *Id.*

Plaintiff alleges that on February 3, 2016, he returned to sick call and was examined by LPN V. Hamlet who gave him a tube of analgesic balm and 10 packets of Ibuprofen. Plaintiff was assured he would be fine even though he was in obvious pain and declared that he was in pain. Plaintiff alleges that a failure to adequately identify his medical need and determine the urgency of his need for medical care further delayed and denied him access to be seen by a specialist. *Id.* at 6.

On March 21, 2016, he declared a medical emergency after falling or collapsing while pushing a lawn mower, but when he arrived at the medical department he was refused treatment and no attempt was made to examine him. He was told to sign up for sick call. *Id.* On March 22, 2016, he saw a nurse who looked at his right knee and noted something was wrong. He told her about the February 1 incident and that he collapsed yesterday while pushing a lawn mower. He was called back to medical later in the day and saw the nurse, who stated he should be seen. He was referred to ARNP Lemon who told him he might need surgery and that she would schedule an X-ray. She prescribed him 600 mg of Ibuprofen and gave him packets to use until his prescription was filled. *Id.* at 6. On April 1, 2016, he had X-rays. *Id.*

Plaintiff alleges that on April 6, LPN K. Neely documented that he had a "chronic tear of the quadricep and tendon," which information he discovered after reviewing his medical chart on December 23, 2016, with records supervisor Robin Jenkins. *Id.* On April 21, 2016, he saw Dr. Ortiz at the medical department, who explained the test results and recommended he have a consultation with an orthopedist, and that he receive a sleeve for his right knee, but the doctor "advised that the sleeve wouldn't help with the type of injury [he] sustained." He alleged the doctor

told him that his injury required immediate attention and that the longer it took to get surgery, the chances of full recovery diminish. Dr. Ortiz told him he had worked there for 15 years and that DOC tends not to pay for this type of injury, but that he was certain Plaintiff needed surgery. Plaintiff was prescribed 600 mg of Ibuprofen. *Id.* at 6-7. Nevertheless, Plaintiff had an orthopedic consult on June 24, 2016, by Dr. Maxwell Steele in Jacksonville, Florida. He scheduled Plaintiff for surgery, which took place on July 27, 2016.

Plaintiff alleges a violation of the Eighth Amendment by denial of medical care pursuant to a policy of Corizon. He alleges that Corizon allowed LPNs to perform care that, according to Plaintiff, only RNs are allowed to perform. He alleges that Corizon had a cost-reduction policy that was the "moving force behind the alleged violation of Plaintiff's constitutional rights." Plaintiff alleged that Dr. Ortiz's comments support the finding that the surgery would not happen due to cost. *Id.* at 7. He alleges that Corizon should be held liable for the acts and omission of Defendants Tanner and Hamlet. ECF No. 8 at 9.

Plaintiff alleges that Defendant Tanner deprived him of his Eighth Amendment right to medical care for a serious medical condition by failing to provide medical treatment on February 1, 2016. He alleges Defendant

Hamlet violated his Eighth Amendment rights by failing to adequately identify his medical need, delaying access to a specialist, and forcing Plaintiff to endure the unnecessary and wanton infliction of pain.  Plaintiff is seeking payment for all present and future medical bills, $600,000 in damages from the nurses, and $1 million from Corizon; and he sues each defendant in their official and individual capacities.  ECF No. 8 at 9.

## Motion to Dismiss

### A. Failure to Exhaust Administrative Remedies

Defendants move to dismiss the amended complaint, contending that Plaintiff has not properly exhausted his available administrative remedies as required by the Prison Litigation Reform Act in that he only submitted a grievance pertaining to the orthopedic consultation and knee brace, not the care provided by Tanner and Hamlet.  ECF No. 24 at 22.  Defendants further contend that Plaintiff did not complete the process by appealing denial of the grievance.  *Id.*

### B. Failure to State a Claim

Defendants Tanner and Hamlet contend that the amended complaint does not contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face.  ECF No. 24 at 5.  Defendant Corizon, a corporation, contends that liability can only attach if an official

unconstitutional policy or custom of the corporation caused the alleged deprivation of constitutional rights. Corizon argues that Plaintiff has alleged insufficient facts to prove that Corizon had an officially promulgated unconstitutional policy or a widespread unofficial unconstitutional custom or practice created by a policymaker that resulted in the alleged deprivation of constitutional rights, and which was created with the knowledge that Plaintiff's injury was a highly probable consequence of the policy. *Id.* at 16. Corizon contends that Plaintiff only alleges in conclusory fashion that he was denied medical care pursuant to a policy or custom of Corizon, and that Corizon should be vicariously liable for the acts and omissions of Tanner and Hamlet. *Id.*

**Applicable Standards and Analysis**

    **A. Exhaustion of Administrative remedies**

In enacting the Prison Litigation Reform Act (PLRA), Congress mandated that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement is mandatory, Alexander v. Hawk, 159 F.3d 1321, 1324-25 (11th Cir. 1998), and applies to all inmate

suits about prison life, whether they involve general circumstances or particular episodes, whether they allege excessive force or some other wrong, and whether they seek only monetary damages. Porter v. Nussle, 534 U.S. 516, 524 (2002); Woodford v. Ngo, 548 U.S. 81, 85 (2006); Booth v. Churner, 532 U.S. 731, 738-39 (2001) ("The 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained.")

"[T]he PLRA exhaustion requirement requires proper exhaustion." Woodford, 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91 (bracketed material added).

Failure to exhaust administrative remedies is an affirmative defense that the defendant bears the burden of proving. *See* Jones v. Bock, 549 U.S. 199, 216 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints.").

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps. Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008). First, the Court looks to the factual allegations in the

Defendants' motion, and those in the Plaintiff's response, if any.  *Id.*  If they conflict, the Court accepts the Plaintiff's version as true.  "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed."  *Id.; see also* Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008).  If the complaint is not subject to dismissal at the first step, "the court proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion."  Turner, 541 F.3d at 1082.  "Where exhaustion . . . is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."  Bryant, 530 F.3d at 1377.

A prisoner must comply with the processes and established grievance procedures of the institution.  *See* Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999).  In Florida, a state-incarcerated prisoner generally must: (1) file an informal grievance with a designated prison staff member; (2) file a formal grievance with the institution's warden; and then (3) submit an appeal to the Secretary of the FDOC.  Chandler v. Crosby, 379 F.3d 1278, 1288 (11th Cir. 2004) (citing Fla. Admin. Code §§ 33-103.005-103.007).  The inmate may skip the informal grievance step and

immediately file a formal grievance for certain complaints, including medical grievances. *See* Fla. Admin. Code § 33-103.006(2)(g).

Plaintiff's response states that his claims of inadequate medical treatment were exhausted. His response includes a grievance dated May 26, 2016, complaining that he was not referred to an orthopedist in a timely manner after his February 1, 2016, injury, and stating that the longer surgery is delayed, the smaller his chance of a full recovery. The grievance log number is 16-6-24874. ECF No. 27-1 at 12. He also provides a June 6, 2016, Part C-Receipt, for a grievance in regard to "07H (inadequate treatment (medical))." ECF No. 27-1 at 10. Also in Exhibit 4 to Plaintiff's response is a copy of "Part B-Response" to Grievance Log Number 16-6-24874, stating in part, "Appeal Denied: Your request for administrative remedy was received at this office and it was carefully evaluated. Records available to this office were also reviewed. Reviewed records indicate that you were seen by the Orthopedist on 6/24/16." The response is signed by an employee and shows the signature of the Warden, Assistant Warden or Secretary's Representative on September 8, 2016. ECF No 27-1 at 11.

At this stage in the proceedings, in a motion to dismiss, Plaintiff's version of the facts must be credited, and his version substantiates his contention that he exhausted his remedies. Plaintiff raised the issue of his

claim that Defendants did not provide timely or appropriate care in February, and it was addressed on the merits.  Thus, Plaintiff's amended complaint, ECF No. 8, should not be dismissed for failure to exhaust administrative remedies.[2]

### B.  Failure to State a Claim

Whether a complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted requires the Court to determine if the plaintiff has alleged enough plausible facts to support the claim stated.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561 (2007) (retiring the standard from Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal,

---

[2]  Defendants do not contend that the grievances were not timely submitted. Moreover, such a contention in this case would be unavailing.  "[D]istrict courts may not find a lack of exhaustion by enforcing procedural bars that the prison declined to enforce." Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1208 (11th Cir. 2015). *See also* Hill v. Curcione, 657 F.3d 116, 125 (2d Cir. 2011) (holding that the exhaustion requirement is satisfied by an untimely filing of a grievance if it is accepted and decided on the merits by the appropriate prison authority) (cited in Whatley, 802 F.3d at 1215). The prison accepted Plaintiff's grievance and responded on the merits to his appeal.

556 U.S. at 678 (citing Twombly, 550 U.S. at 556); *see also* Speaker v. U.S. Dep't of Health, 623 F.3d 1371, 1380 (11th Cir. 2010). "The plausibility standard" is not the same as a "probability requirement," and "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). A complaint that "pleads facts that are 'merely consistent with' a defendant's liability," falls "short of the line between possibility and plausibility." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

    The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests. Swierkiewicz v. Sorema, 534 U.S. 506, 512 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions."). Pro se complaints are held to less stringent standards than those drafted by an attorney. Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-521 (1972)). However, the requirements of Rule 8 do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678-79.

    A complaint does not need detailed factual allegations to survive a motion to dismiss, but Rule 8 "demands more than an unadorned, the-

defendant-unlawfully-harmed-me accusation." 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting Twombly, 550 U.S. at 555). Thus, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003).

Deliberate indifference to the serious medical needs of sentenced prisoners constitutes unnecessary and wanton infliction of pain and violates the Eighth Amendment's prohibition of cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). "However, not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' " McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999) (citation omitted) (quoted in Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)). An "official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." McElligott, 182 F.3d at 1255 (citing Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425 (11th Cir. 1997), overruled on other grounds by LeFrere v. Quezada, 588 F.3d 1317, 1318 (11th Cir. 2009), and Mandel v. Doe, 888 F.2d 783, 788 (11th Cir. 1989)).

In order to state a cognizable claim, the prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow, 320 F.3d at 1243 (quotations omitted) (quoted in Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011)). "In either of these situations, the medical need must be 'one that, if left unattended, 'pos[es] a substantial risk of serious harm.' " Farrow, 320 F.3d at 1243 (citation omitted); *see also* Mann v. Taser Intern., Inc., 588 F.3d 1291, 1307 (11th Cir. 2009).

Deliberate indifference requires more than negligence, but it is unnecessary to show a defendant intended to cause harm. Farmer v. Brennan, 511 U.S. 825, 835 (1994). Proof of deliberate indifference requires a subjective component and a showing of conscious disregard of a substantial risk of harm. Farmer v. Brennan, 511 U.S. 825, 838-40 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298(1991)). Combining the standards from Farmer and Estelle, the Eleventh Circuit has clarified that, ultimately, there are four requirements to bringing an Eighth Amendment claim for the denial of medical care: "an objectively serious need, an

objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." Taylor v. Adams, 221 F.3d 1254 (11th Cir. 2000); Farrow, 320 F.3d at 1243.  To show a defendant acted with deliberate indifference, "a prisoner must show the prison official's: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence.' " Bingham, 654 F.3d at 1176 (quoting Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004)); McElligott, 182 F.3d at 1255.  "Conduct that is more than mere negligence includes; (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." Bingham, 654 F.3d at 1176.

### 1. Defendants Tanner and Hamlet

Defendants Tanner and Hamlet move to dismiss, contending that Plaintiff alleges no more than medical negligence, and does not allege facts showing he had an objectively serious medical need that Defendants intentionally disregarded.  ECF No. 24 at 17-19.

Plaintiff has alleged that he was injured on February 1, 2016, and that when he presented at the medical department in obvious and declared pain, Defendant Tanner did not examine him, did not adequately assess his

medical need that ultimately required surgery for a torn quadricep and tendon, and disregarded the serious risk of harm that failure to timely refer him to a specialist would cause.  He contended in his response to the motion to dismiss that Defendant Tanner failed to examine him, stated that he did not have a medical emergency, and failed to timely refer him for treatment when he presented with complaints of serious knee pain.  ECF No. 27 at 7-8.

     Plaintiff has alleged that when he returned to the medical department on February 3, 2016, Defendant Hamlet assured him he would be fine in spite of his obvious and declared pain, and that her inadequate screening and failure to refer him to a specialist resulted in delay that worsened his condition.  He contends in his response that Hamlet inadequately screened him, and that records of his inmate account show that she did not charge a co-payment for the visit, thus indicating that she did not screen him.  He contends that he followed the instructions given him by Hamlet and his condition worsened due to her inadequate care.  *Id.* at 11.  He alleged that the nurses were "deliberately indifferent" toward his serious medical need in order to cut costs for Corizon, and that both Tanner and Hamlet were inadequately supervised.  He further alleged that the delay in proper diagnosis and referral to a specialist reduced his chances of a full recovery.

These allegations, while sparse, are not merely legal conclusions, but are supported by recitations of fact, which this Court must accept as true for the purposes of this motion. The allegations of the amended complaint are not merely "legal conclusions." Construed liberally, as the Court must do for a pro se litigant, these allegations are sufficient to state a claim. Thus, the motion to dismiss for failure to state a claim against Defendants Tanner and Hamlet should be denied.

### 2. Defendant Corizon

Corizon is not a governmental entity, but "[w]here a function which is traditionally the exclusive prerogative of the state . . . is performed by a private entity," that private entity may be held liable under § 1983. Ancata v. Prison Health Servs., 769 F.2d 700, 703 (11th Cir. 1985) (quoted in Fields v. Corizon Health, Inc., 490 F. App'x 174, 181-82 (11th Cir. 2012) (unpublished). However, the doctrine of respondeat superior or vicarious liability does not provide a basis for recovery for a § 1983 claim of constitutional deprivation.[3] Liability cannot be based on supervisory authority alone. Plaintiff "must prove that [Corizon] had a 'policy or custom'

---

[3] Marsh v. Butler Cnty., 268 F.3d 1014, 1035 (11th Cir. 2001) (en banc) (cited in Farrow v. West, 320 F.3d 1235, 1249, n.1 (11th Cir. 2003), abrogated in part by Twombley, 550 U.S. at 561-63; see also Collins v. City of Harker Heights, 503 U.S. 115, 112 (1992); Pembaur v. City of Cincinnati, 475 U.S. 469, 478-79(1986); Harvey v. Harvey, 949 F.2d 1127, 1129 (11th Cir. 1992) (citing Monell v. Dep't of Soc. Servs, 436 U.S. 658, 691 (1978)).

Case No. 4:17cv249-RH/CAS

of deliberate indifference that led to the violation of his constitutional right." Craig, v. Floyd Cty., 643 F.3d 1306, 1310 (11th Cir. 2011).

"Because a [corporation] rarely will have an officially-adopted policy of permitting a particular constitutional violation, most plaintiffs . . . must show that the [corporation] has a custom or practice of permitting it and that the [corporation's] custom or practice is 'the moving force [behind] the constitutional violation.' " Grech v. Clayton Cty., Ga., 335 F.3d 1326, 1330 (11th Cir. 2003) (citations omitted and alterations added).  Thus, for Corizon to be liable, there must be an identifiable policy which was "the moving force" behind injury or harm to Plaintiff.  *See* Fields, 490 F. App'x. at 183-85.  And, there must be "a direct causal link between the policy or custom and the alleged constitutional deprivation." Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989).

Plaintiff alleged that Corizon had a policy or custom, which was known to Dr. Ortiz and related to Plaintiff, for avoiding surgery for this type of injury in order to save money and increase profits.  He alleged that the actions of Corizon's employees were consistent with, and proof of, the policy or custom.  He alleged that this policy, and the resulting refusal of Corizon employees to affirmatively recognize his serious medical need and his need for a specialist and surgery, was directly and causally linked to his

constitutional deprivation, manifesting in unnecessary pain and a reduced long-term chance of full recovery.  Because Plaintiff has sufficiently alleged a policy or custom of Corizon that he contends directly resulted in his constitutional deprivation, Defendant's motion to dismiss the amended complaint against Corizon should be denied.

## RECOMMENDATION

It is respectfully **RECOMMENDED** that the motion to dismiss filed by Defendants Corizon, Tanner, and Hamlet, ECF No. 24, be **DENIED,** that this case be **REMANDED** for further proceedings, and that Defendants be directed to file answers to Plaintiff's amended complaint.

**IN CHAMBERS** at Tallahassee, Florida, on June 29, 2018.


s/ Charles A. Stampelos
CHARLES A. STAMPELOS
UNITED STATES MAGISTRATE JUDGE


## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the Magistrate Judge's findings or**

**recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**

Case No. 4:17cv249-RH/CAS