**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**TERRANCE L. KIMBROUGH,**

    **Plaintiff,**

vs.                                                        Case No. 4:17cv249-RH/CAS

**CORIZON HEALTH, INC.,
M. TANNER, and V. HAMLET,**

    **Defendants.**

_____/

## **SECOND REPORT AND RECOMMENDATION**

    Plaintiff, proceeding pro se, filed an amended complaint, ECF No. 8, alleging that his Eighth Amendment rights were violated when he was not provided timely and appropriate medical care after suffering a tendon tear in his right knee. Defendants filed a motion to dismiss in January 2018, ECF No. 24, which was denied. ECF Nos. 29-30. Thereafter, Defendants filed an answer, ECF No. 32, and the parties engaged in discovery. ECF No. 33. On January 28, 2019, Defendants filed a motion for summary judgment, ECF No. 37, and Plaintiff was advised of his obligation to respond to that motion. ECF No. 40. Plaintiff filed his opposition, ECF No.

44, and Defendants filed a reply. ECF No. 45. The motion for summary judgment, ECF No. 37, as supported by exhibits previously filed with the motion to dismiss, *see* ECF No. 23-1, is ready for a ruling.

**Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Thus, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553. The non-moving party must

then show[1] though affidavits or other Rule 56 evidence "that there is a genuine issue for trial" or "an absence of evidence to support the nonmoving party's case." Id. at 325, 106 S. Ct. at 2554; Beard v. Banks, 548 U.S. 521, 529, 126 S. Ct. 2572, 2578, 165 L. Ed. 2d 697 (2006).

An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). Additionally, "the issue of fact must be 'genuine'" and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (other citations omitted). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th

---

[1] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), cert. denied 522 U.S. 1126 (1998) (quoting Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 and Fed. R. Civ. P. 56(c), (e))). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

Cir. 2003) (quoting Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)).

In ruling on summary judgment motions, a judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511 (noting that a "scintilla of evidence" is not enough to refer the matter to a jury). The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)). All "justifiable inferences" must be resolved in the light most favorable to the nonmoving party, Beard, 548 U.S. at 529, 126 S. Ct. at 2578, but "only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoted in Ricci v. DeStefano, 557 U.S. 557, 586, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490

(2009)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356 (other citation omitted).

**The relevant Rule 56(e) evidence**

On February 1, 2016, Plaintiff went to the prison medical clinic complaining of pain in his right knee.  ECF No. 23-1 at 1.[2]  Plaintiff said he injured himself while playing basketball.  *Id.* at 3; ECF No. 8 at 5.  Plaintiff alleged that Defendant Tanner "refused to examine [him] or provide any medical treatment" even though he was limping and "in visible pain."  ECF No. 8 at 5.

---

[2] Although Defendants' summary judgment motion is document 37, the medical records referenced in the motion were filed previously as document 23-1.  Plaintiff states that he generally accepts Defendants' statement of facts, subject to just a few corrections.  ECF No. 44 at 2.  None of Plaintiff's "corrections" concern actions of the named Defendants.  *Id.* at 3.  It is further noted that Plaintiff's "declaration" does not present statements of fact concerning the actions of the Defendants.  ECF No. 44-1.  However, Plaintiff's amended complaint was signed under penalty of perjury and facts presented there have been included.  ECF No. 8 at 5-8.

The medical record,[3] however, shows that although Defendant Tanner, a licensed practical nurse, did not arguably provide treatment, she did examine Plaintiff. ECF No. 23-1 at 1-2. Defendant Tanner completed a "fracture/dislocation/ sprain protocol" form which noted that Plaintiff's injury was "mild," he was "ambulatory to medical clinic," and he reported his pain level as a 4 on a scale of 1-10. *Id.* at 1. Defendant Tanner noted that Plaintiff was unable to move his knee, but she found there was no deformity, only mild swelling, and the temperature around the injury site was "warm" to the touch. *Id.* Defendant Tanner found a "pulse distal to injury" was present and she took Plaintiff's vital signs. *Id.* Defendant Tanner directed Plaintiff to follow up in sick call as his injury was not deemed "a medical emergency." *Id.* The form also shows that Plaintiff was given Ibuprofen, instructed to "apply warm, moist towel to injury site," and instructed "on the use of crutches or other assistive devices when applicable," although it does not appear that Plaintiff was provided any crutches or other devices. *Id.* at 1-2.

---

[3] "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). Plaintiff's factual allegation in the complaint is refuted by the medical records.

On the following day, February 2nd, Plaintiff said that he submitted an inmate sick-call request form. ECF No. 8 at 5. He said that he sat in the medical clinic for the entire day without being seen. *Id.* An officer suggested he submit another sick-call request form, which Plaintiff said he did. *Id.* On February 3, 2016, Plaintiff "returned to sick call and was examined" by Nurse Hamlet. *Id.* at 5. Defendant Hamlet, a licensed practical nurse, told Plaintiff the inflammation would subside and he would be fine. *Id.* at 6. She gave him a tube of analgesic balm and 10 packets of Ibuprofen. *Id.* at 5-6.

The documentary evidence provided by Defendants reveals only one sick call request form which was dated February 3, 2016, 6:35 a.m. ECF No. 23-1 at 3. Plaintiff wrote on the form[4] that he injured his right leg playing basketball on February 1, 2016. *Id.* The form indicates it was received on February 3rd and Plaintiff was "triaged" on that same day. *Id.*

Plaintiff was examined by Defendant Hamlet at 8:00 a.m. *Id.* at 4. Another "fracture/dislocation/ sprain protocol" form was completed, noting that Plaintiff was complaining of right knee pain and edema. *Id.* Plaintiff

---

[4] Plaintiff did not mention that he sat in medical the day before without being examined, nor did he indicate that it was his second sick call request for the same issue. ECF No. 23-1 at 3.

reported his pain was on the lateral side of his kneed and he again said it was a 4 on a 1-10 scale. *Id.* There was no deformity or numbness noted, only mild swelling, and no abrasion or laceration. *Id.* Nurse Hamlet advised Plaintiff to elevate the leg and he was given Ibuprofen.[5] *Id.*

Plaintiff alleged that on March 21, 2016, he "declared a medical emergency after falling from pushing a lawn mower." ECF No. 8 at 6. He said that after arriving in the medical clinic, he was refused treatment and no one examined him. *Id.* He was "told to sign up for sick call." *Id.*

The medical records reveal Plaintiff submitted a sick-call request form on March 21, 2016, at 2:45 p.m. ECF No. 23-1 at 6. Plaintiff wrote that he had originally injured himself on February 1, 2016, while playing basketball, and said the injury was "treated" on February 3rd. *Id.* He reported that while "pushing a lawn mower," he "collapsed" and his injury now had inflammation. *Id.*

Plaintiff was examined by Nurse Baker, a registered nurse, on March 22, 2016, who completed a pain protocol form. *Id.* at 7; ECF No. 8 at 6. Plaintiff indicated he had been experiencing pain for about a month with

---

[5] As noted above, Plaintiff alleged in his complaint that he was also given an analgesic balm, ECF No. 8 at 5-6, but no such notation was made in the medical record. ECF No. 23-1 at 4-5.

swelling.  ECF No. 23-1 at 7.  He said there had been no recent trauma to the knee, and he had no numbness or tingling.  *Id.*  Plaintiff also said he could walk on it, bear weight, bend it, and straighten it.  *Id.*

The nurse examined Plaintiff and found there was "moderate swelling, and/or fluid on the knee."  ECF No. 23-1 at 8.  Plaintiff was directed to elevate the leg and return if he developed new symptoms or his condition otherwise changed.  *Id.*  A notation in the medical record also indicates that the problem was deemed to not be "an emergency" as Plaintiff had been experiencing "this problem for a long time."  *Id.* at 9.

In his complaint, Plaintiff alleged that after nurse Baker examined his knee, she said it did not "look right."  ECF No. 8 at 6.  Nurse Baker referred Plaintiff to Ms. Lemon-Watson, an advanced registered nurse practitioner the following week.  *Id.*; *see also* ECF No. 23-1 at 9.

The medical record notes that Plaintiff was seen in the clinic on March 29, 2016, and he reported that his knee pain had been increasing.  ECF No. 23-1 at 9.  She scheduled Plaintiff for an x-ray and prescribed him a stronger Ibuprofen.  *Id.* at 9-10; ECF No. 8 at 6.  The x-rays were taken on April 1, 2016, and revealed "no acute fracture, dislocation, or subluxation."  ECF No. 23-1 at 11.  There was "no knee joint effusion."  *Id.*

However, the x-rays showed mild osteoarthritis and "an acute/chronic tear of the quadriceps tendon." *Id.* Based on those results, Plaintiff was scheduled to see the physician for a follow-up appointment and physical examination. *Id.* at 12.

Plaintiff met with Dr. Ortiz on April 21, 2016, who explained the results to Plaintiff. ECF No. 23-1 at 13; ECF No. 8 at 6. Dr. Ortiz recommended an orthopedic surgery consultation and that Plaintiff be given a "sleeve" for his right knee. *Id.* He also told Plaintiff that he believed Plaintiff would need surgery, but that the Department of Corrections tended "to not pay" for such a surgery. ECF No. 8 at 6. Dr. Ortiz entered an order for the knee sleeve and an additional prescription for Ibuprofen. ECF No. 23-1 at 14. The consultation request was submitted that same day and an appointment scheduled for June 15, 2016. ECF No. 23-1 at 15. Plaintiff was seen by Dr. Maxwell Steele on June 24, 2016, and Plaintiff had surgery on July 27, 2016. ECF No. 8 at 7.

**Analysis**

The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832, 114 S.Ct. 1970, 128

L.Ed.2d 811 (1994).  The Eighth Amendment guarantees that prisoners will not be "deprive[d] ... of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981) (quoted in Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004)).  "[B]asic human necessities include food, clothing, shelter, sanitation, medical care, and personal safety."  Harris v. Thigpen, 941 F.2d 1495, 1511 (11th Cir. 1991) (cited in Collins v. Homestead Corr. Inst., 452 F.App'x 848, 850-851 (11th Cir. 2011)).

Deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).  "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotations omitted) (quoted in Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011)).  "In either of these situations, the medical need must be 'one that, if left unattended, 'pos[es] a substantial risk of serious harm.'"  Farrow, 320 F.3d at 1243 (citation omitted); see also Mann v. Taser Intern., Inc., 588 F.3d 1291,

1307 (11th Cir. 2009). Alternatively, "a serious medical need is determined by whether a delay in treating the need worsens the condition" or "if left unattended, poses a substantial risk of serious harm." Mann v. Taser Intern., Inc., 588 F.3d 1291, 1307 (11th Cir. 2009) (citations omitted).

Deliberate indifference requires more than negligence,[6] but it is unnecessary to show a defendant intended to cause harm. Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978, 128 L. Ed. 2d 811 (1994). Deliberate indifference requires a plaintiff to show that a defendant was subjectively reckless and consciously disregarded a substantial risk of serious harm. Wilson v. Seiter, 501 U.S. 294, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (explained in Farmer, 511 U.S. at 838-40, 114 S. Ct. at 1979-80). "The inadvertent or negligent failure to provide adequate medical care 'cannot be said to constitute 'an unnecessary and wanton infliction of pain.'" Estelle, 429 U.S. at 105-06, 97 S.Ct. 285 (quoted in Farrow, 320 F.3d at 1243).

---

[6] "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." Bingham, 654 F.3d at 1176 (citing Brown v. Johnson, 387 F.3d 1344, 1451 (11th Cir. 2004)).

In a case such as this where Plaintiff has alleged the denial of medical care, Plaintiff must demonstrate: "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." Taylor v. Adams, 221 F.3d 1254 (11th Cir. 2000), cert. denied, 531 U.S. 1077 (2001); Farrow, 320 F.3d at 1243. The critical fact to be shown is that Defendants disregarded a risk of harm to Plaintiff "by conduct that [was] more than mere negligen[t]." Bingham, 654 F.3d at 1176 (quotation omitted).

"However, not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'" McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999) (citation omitted) (quoted in Farrow, 320 F.3d at 1243). For example, medical malpractice does not constitute deliberate indifference. Estelle, 429 U.S. at 106, 97 S. Ct. at 292. "Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989)). "A 'complaint that a physician has

been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.'" Estelle, 429 U.S. at 106, 97 S.Ct. at 292 (quoted in Bingham, 654 F.3d at 1176). For example, the prisoner in Estelle received treatment for his back injury, but complained that more should have been done in the way of diagnosis. The Court rejected this as a basis for liability:

> But the question whether an X-ray--or additional diagnostic techniques or forms of treatment--is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.

429 U.S. at 107, 97 S. Ct. at 293. Put simply, an "official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." McElligott, 182 F.3d at 1255 (citations omitted).

Here, Plaintiff's claims against the two nurses named as Defendants cannot survive under Estelle. The evidence reveals that Plaintiff was examined by the nurses on February 1, 2016, and on February 3, 2016. Each nurse examined Plaintiff and completed a form which documented the examination. Each nurse provided Plaintiff with Ibuprofen which, arguably, is treatment. Plaintiff presented with a knee injury but he

reported his pain as only a 4 and was able to walk and bear weight on his leg. Notably, Plaintiff also did not return to the medical clinic to complain of increasing problems or symptoms or to seek stronger pain medication. It is likely that Plaintiff's need for surgery was a result of his second injury in March and not the initial injury which occurred 7 weeks earlier in February. At any rate, Plaintiff did not come forward with evidence to show that either nurse was deliberately indifferent to his medical needs. Failing to diagnose Plaintiff's knee injury does not violate the Eighth Amendment. Summary judgment should be granted in favor of Defendants Tanner and Hamlet.

Plaintiff also brought an Eighth Amendment claim against Corizon. Although Corizon is a private corporation, it provided "medical services to inmates" pursuant to a contract with the Department of Corrections and, thus, it performed "'a function traditionally within the exclusive prerogative of the state' and 'becomes the functional equivalent of the municipality' under section 1983." Buckner v. Toro, 116 F.3d 450, 452 (11th Cir. 1997) (quoted in Craig v. Floyd Cty., Ga., 643 F.3d 1306, 1310 (11th Cir. 2011)).[7]

---

[7] "'Local governing bodies' are 'persons' for purposes of section 1983 and 'can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where ... the action that is alleged to be unconstitutional implements or executes a policy ... officially adopted and promulgated by that body's officers.'" Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (quoted in Denham v.

Thus, liability may attach to Corizon based on a "policy or custom" which constitutes deliberate indifference, but liability "may not be based on the doctrine of respondeat superior." Grech v. Clayton Cnty., Ga., 335 F.3d 1326, 1329 (11th Cir. 2003) (quoted in Craig, 643 F.3d at 1310); see Fields v. Corizon Health, Inc., 490 F.App'x 174, 181-82 (11th Cir. 2012) (affirming that jury could "reasonably conclude that Prison Health's policy of restricting the transportation to hospitals of inmates with serious medical needs was a direct cause of Mr. Fields' injuries.")). In other words, Corizon may not be held liable for the actions of a doctor or nurse found to be deliberately indifferent to a prisoner's serious medical needs. To the degree Plaintiff sought "to hold Corizon liable for the acts and omissions of [Defendants] M. Tanner and V. Hamlet," ECF No. 8 at 9, that claim is insufficient as a matter of law.

Corizon may only be held liable if sufficient evidence is presented to show that: (1) Plaintiff's constitutional rights were violated, (2) that Corizon had a custom or policy that constituted deliberate indifference to that constitutional right, and (3) that the custom or policy "caused the violation." Denham, 675 F. App'x at 940-41. Here, Plaintiff has not demonstrated the

---

Corizon Health, Inc., 675 F. App'x 935, 940 (11th Cir. 2017)).

Case No. 4:17cv249-RH/CAS

first element because he has not shown a constitutional violation. Moreover, Plaintiff has not come forward with any evidence to support his asserted claim that Corizon had a policy or custom of denying or delaying surgery to save money and increase profits. The evidence reveals Plaintiff injured his knee for the second time on March 21, 2016. He was examined on March 22nd and again on the 29th. X-rays were taken on April 1st and Plaintiff met with Dr. Ortiz on April 21st to discuss the results. It was recommended that Plaintiff have an orthopedic consultation, which was approved, and Plaintiff was seen by Dr. Steele on June 24, 2016. Surgery ultimately was approved and performed on July 27th. Plaintiff had surgery within four months of the second injury. Even in the world outside the confines of prison, such delay is routine. Plaintiff has not shown a policy or custom of unnecessary delay,[8] nor has he shown that his condition was made worse by the four month delay.

---

[8] Moreover, Plaintiff's complaint alleged that Dr. Ortiz told him that he had worked "for D.O.C. for over 15 years and they tend to not pay for [that] type of injury." ECF No. 8 at 7. That allegation was sufficient to survive a motion to dismiss, but Plaintiff has not supported it with evidence. Furthermore, Plaintiff's allegation suggests that a denial or delay in approving surgery to save money was a custom of the Department of Corrections and not Corizon.

Plaintiff also has not provided any evidence to show that Corizon improperly used LPNs to assess prisoners instead of RNs to save costs, or that such use could be deemed to be "deliberate indifference" to the right of prisoners to receive medical care. *See* ECF No. 8 at 7. Because there is no evidence of a policy or custom, much less that any such policy or custom violated Plaintiff's rights and caused him harm, summary judgment should be granted in favor of Corizon on all Eighth Amendment claims.

## RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' motion for summary judgment, ECF No. 37, be **GRANTED** and judgment entered in Defendants favor on all claims.

**IN CHAMBERS** at Tallahassee, Florida, on July 12, 2019.

 S/   Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written**

objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). **<u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>** If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**